IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WILLIAM SLAY STEVENS,           )
                                )
        Plaintiff,              )
                                )
v.                              )     CASE NO. 2:13-cv-416-MEF
                                )       (WO -- Do Not Publish)
RELIANCE FINANCIAL              )
CORPORATION,                    )
                                )
        Defendant.              )

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Reliance Financial Corporation's ("Reliance Financial") Motion to Dismiss (Doc. #7) wherein Reliance Financial argues that personal jurisdiction is lacking and, even if this Court has personal jurisdiction over it, Plaintiff William Slay Stevens ("Stevens") has failed to assert viable claims against it. Stevens opposes Reliance Financial's motion (Doc. #22), arguing that Reliance Financial has contractually consented to personal jurisdiction in this Court and that, if this Court finds otherwise, Stevens should at least be permitted to conduct jurisdictional discovery on the issue of whether Reliance Financial simply acted as the alter ego of one of its Alabama subsidiaries, thus subjecting it to the personal jurisdiction of this Court. Finally, Stevens argues that his claims have been adequately pled for purposes of Rule 12(b)(6). For the reasons set forth below, the Court finds that Reliance Financial's motion is due to be GRANTED.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**A.     Factual History**

Prior to April 16, 2009, Stevens was employed by an investment advisory firm in Montgomery, Alabama called Legacy Financial Group ("Legacy Financial"), which was owned by Henry E. Walker ("Walker").  Reliance Securities, LLC ("Reliance Securities") was the broker/dealer for Legacy Financial, meaning that each broker employed by Legacy Financial, including Stevens, was licensed through Reliance Securities.  Stevens maintained his license through, and was a registered representative of, Reliance Securities from September 2008 until February 2010.

Reliance Financial, a Georgia corporation, owned 100% of its broker/subsidiary, Reliance Securities, prior to April 16, 2009.  The complaint alleges that, during this time, Reliance Financial "fully controlled" Reliance Securities and its Representatives "through the Board of Directors of Reliance Securities, which was comprised of, and controlled by directors and officers of Reliance Financial[,] . . . the internal audit department of Reliance Financial, as well as through its legal department, who had authority to direct management and were responsible for oversight of Reliance Securities' and its Representatives' adherence to and compliance with regulatory guidelines set forth by the SEC and The Financial Industry Regulatory Authority (FINRA)."  (Doc. #1-1, ¶ 7.)

In an effort to grow his business, Walker formed an entity named First Legacy Investors, Inc. ("First Legacy").  In December 2008, First Legacy and Reliance Financial began negotiating a deal for First Legacy to purchase 90% of the membership interests of

Reliance Securities.  Negotiations continued over the course of several months and ended with an April 16, 2009 closing in Atlanta, Georgia, at which time Reliance Financial and First Legacy executed a Membership Interest Purchase Agreement (the "Agreement"), whereby First Legacy purchased 90% of Reliance Financial's membership interests in Reliance Securities.[1]  Stevens was not involved in the negotiations of this deal, nor was he a party to the Agreement.  Indeed, the only parties to this transaction and the only signatories to the Agreement were Reliance Financial and First Legacy.

During this same time, but before the April 16, 2009 closing, First Legacy began contemplating the sale of First Legacy promissory notes and preferred stock to fund First Legacy's purchase of Reliance Securities.  First Legacy began putting the preferred stock offering together prior to April 16, 2009, and began to issue promissory notes around February 19, 2009.

On April 15, 2009, at Walker's direction, Stevens sold two of the First Legacy promissory notes to James C. Little, III ("Little"), in his capacity as trustee for the Susan B. Little Family Trust (the "Trust").  These promissory notes were not registered with the Alabama Securities Commission, nor were they subject to an exemption from registration. Stevens also sold First Legacy preferred stock to Little and the Trust.

Ultimately, First Legacy and its subsidiaries floundered financially and Little lost the money invested in the First Legacy promissory notes and preferred stock.  Investigations

---

[1]  After April 16, 2009, Reliance Financial retained a 10% ownership interest in Reliance Securities.

ensued, and it was ultimately determined by the Alabama Securities Commission that the First Legacy promissory notes were securities offered in violation of the Alabama Securities Act. The Alabama Securities Commission further determined that the First Legacy preferred stock was unsuitable for Little and the Trust and, therefore, was sold in violation of the Alabama Securities Act. As a result of these findings, Stevens's securities licenses were revoked, and the Alabama Securities Commission barred him from working in the securities industry in the State of Alabama. Stevens also entered into a Letter of Waiver, Acceptance and Consent with FINRA.

On July 13, 2010, Little sued Stevens, among others, in the Circuit Court of Montgomery County, Alabama, asserting violations of the Alabama Securities Act as well as other state law claims. On February 25, 2011, Little amended his complaint to add Reliance Financial as a defendant. An arbitration before FINRA was also conducted, but because Reliance Financial is not a member of FINRA, it litigated Little's claims in state court, while the FINRA arbitration proceeded simultaneously. Reliance Financial did not defend Stevens in either the state court proceeding or the FINRA arbitration. In late July 2012, the arbitration panel issued an award against Stevens and others and in Little's favor in the amount of $835,000. To the Court's knowledge, Little has not attempted to collect the award from Stevens, who, along with others, was held jointly and severally liable for Little's award.

**B.    Procedural History**

On June 14, 2013, Stevens filed this lawsuit in the Circuit Court of Montgomery

4

County, Alabama, seeking indemnification from Reliance Financial for the $835,000 arbitration award entered against him, in addition to claims for wantonness and fraud. Stevens claims that, as part of the Agreement, Reliance Financial agreed to indemnify him for all of his pre-April 16, 2009 actions, including his own unlawful conduct in selling the First Legacy promissory notes and preferred stock to Little and the Trust.  Stevens also claims that Reliance Financial acted wantonly and fraudulently when Reliance Financial failed to disclose to Stevens that it had agreed to indemnify him for this conduct in the Agreement.  (Doc. #1-1.)

Jurisdiction for Stevens's action is based on Section 10.6(d) of the Agreement, which states:

> Seller (Reliance Financial) hereby consents to the non-exclusive jurisdiction of any court in the United States in which a Proceeding is brought against an Indemnified Person for purposes of any claim that an Indemnified Person may have under this Agreement with respect to such Proceeding or the matters alleged therein.

(Doc. #1-2, Section 10, ¶ 10.6(d)) (alteration to original).  Thus, according to Stevens, because he was sued by Little in the Montgomery County Circuit Court, Reliance Financial is subject to the jurisdiction of that court (and, presumably, any court to which such action is removed) for purposes of any claim that Stevens, as a purported Indemnified Person, has under the Agreement with respect to those proceedings.

On July 17, 2013, Reliance Financial removed the case to this Court.  Reliance Financial has now filed a motion to dismiss, alleging that this Court lacks personal jurisdiction over it and that, even if such jurisdiction exists, Stevens has failed to allege

viable claims against it.  Reliance Financial denies that it contractually consented in the Agreement to the personal jurisdiction of this Court and claims that, in the absence of contractual consent, it lacks sufficient minimum contacts with this forum to satisfy due process.  Reliance Financial further argues that, even if personal jurisdiction exists in this case, Stevens does not qualify as an Indemnified Person under the Agreement and, as a result, his claims for indemnification, wantonness, and fraud, all of which stem from his alleged status as an "Indemnified Person" under the Agreement, fail as a matter of law.

## II.  STANDARDS OF REVIEW

### A.      Rule 12(b)(2) – Lack of Personal Jurisdiction

A Rule 12(b)(2) motion to dismiss attacks the district court's ability to assert jurisdiction over the defendant's person.  *See* Fed. R. Civ. P. 12(b)(2).  In determining whether personal jurisdiction exists, a federal court sitting in diversity must undertake a two-step inquiry: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."  *Un. Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  Where a district court does not conduct an evidentiary hearing, "[t]he plaintiff bears the burden of establishing personal jurisdiction over the defendant [but] 'need only make a prima facie showing.'" *S & Davis Int'l, Inc. v. The Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000) (quoting *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990)).  A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict.  *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th

Cir. 2000). The district court must accept the allegations in the complaint as true to the extent they are uncontroverted by the defendant's affidavits. *Id.* "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Mazer*, 556 F.3d at 1274 (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)). If "the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier*, 288 F.3d at 1269.

### B.      Rule 12(b)(6) – Failure to State a Claim

In considering a Rule 12(b)(6) motion to dismiss, "the court accepts the plaintiff's allegations as true . . . and construes the complaint liberally in the plaintiff's favor." *Whitson v. Staff Acquisition, Inc.*, 41 F. Supp. 2d 1294, 1297 (M.D. Ala. 1999). Further, a district court must favor the plaintiff with "all reasonable inferences from the allegations in the complaint." *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (internal quotations omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint does not state a facially plausible claim for relief if it shows only "a sheer

possibility that the defendant acted unlawfully." *Id.* While a complaint need not contain detailed factual allegations to survive a Rule 12(b)(6) motion, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation and citations omitted). Absent the necessary factual allegations, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Id.* Courts are also not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Granting a motion to dismiss is appropriate only "when it is demonstrated beyond a doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Reeves v. DSI Sec. Servs.*, 331 Fed. App'x 659, 661 (11th Cir. 2009).

## III.  DISCUSSION

Reliance Financial is seeking dismissal of Stevens's complaint on two separate grounds. Reliance Financial first argues that Stevens's complaint is due to be dismissed under Rule 12(b)(2) because the Court lacks personal jurisdiction over it, either through contractual consent or under a traditional due process analysis. Reliance Financial next argues that, even if the Court does exercise personal jurisdiction over it, Stevens's complaint is still due to be dismissed because he has failed to state any claims against Reliance Financial for which relief can be granted under Rule 12(b)(6). The Court will address Reliance Financial's Rule 12(b)(2) motion first, as challenges to jurisdiction must be resolved before a district court can consider a Rule 12(b)(6) motion. *See Thompson v. Greyhound Lines, Inc.*, 2012 WL 6213792, at *1 (S.D. Ala. Dec. 13, 2012) (citing *Republic of Panama*

*v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997); *Jones v. State of Georgia*, 725 F.2d 622, 623 (11th Cir. 1984)).

There are essentially two issues for the Court to resolve with respect to personal jurisdiction in this case: (1) whether Reliance Financial contractually consented to the personal jurisdiction of this Court in the Agreement, and (2) if not, whether the Court can exercise personal jurisdiction over Reliance Financial under a traditional due process analysis. The Court resolves both issues in the negative.

First, the Court finds that Reliance Financial did not contractually consent to be subject to the personal jurisdiction of this Court when it entered into the Agreement with First Legacy. The particular clause of the Agreement at issue, and which Stevens claims confers personal jurisdiction on this Court, reads as follows:

> Seller [Reliance Financial] hereby consents to the non-exclusive jurisdiction of any court in the United States in which a Proceeding is brought against an Indemnified Person for purposes of any claim that an Indemnified Person may have under this Agreement with respect to such Proceeding or the matters alleged therein.

(Doc. #1.2, ¶10.6(d)) (alteration to original). According to Stevens, he qualifies as an Indemnified Person under the Agreement because he was a Registered Representative of Reliance Securities (then owned by Reliance Financial) when he sold the First Legacy promissory notes and preferred stock to Little and the Trust. Therefore, based on Stevens's logic, because Little filed a lawsuit against him in Montgomery County Circuit Court arising out of those sales, Reliance Financial consented to the jurisdiction of that court, and thus, this Court by way of removal, for purposes of any claim that Stevens has under the Agreement

9

arising from Little's lawsuit.  This, according to Stevens, encompasses all of his claims in this lawsuit (indemnification, wantonness, and fraud) because they arise out of the Little proceedings.[2]

Stevens's argument fails for several reasons.  First, the Court agrees with Reliance Financial that the provision at issue in the Agreement is a limited consent to personal jurisdiction, rather than a blanket consent.  While Stevens argues that Reliance Financial "agreed that it would submit to the jurisdiction in any state where an individual claiming 'Indemnified Person' status was sued[,]" his interpretation of Section 10.6(d) is much too broad.  Reliance Financial only agreed that it would submit to the personal jurisdiction of any court in which a proceeding is brought against an Indemnified Person for purposes of any claim that an Indemnified Person may have under the Agreement with respect to ***that particular*** proceeding.  Thus, even assuming that Stevens qualifies as an Indemnified Person under the Agreement (which is a disputed issue the Court will not resolve at this time), Section 10.6(d) would confer personal jurisdiction over Reliance Financial to the Montgomery County Circuit Court–the court in which the Little proceeding was brought–for purposes of any claim that Stevens may have under the Agreement with respect to that particular proceeding.  However, as Reliance Financial points out, Stevens never asserted his pending indemnification, wantonness, and fraud claims in the Little action before the

---

[2]  In essence, these claims are that Reliance Financial should indemnify Stevens for the arbitration award entered against him in the Little proceedings and that Reliance Financial wantonly and fraudulently failed to disclose that it had a duty to indemnify and defend Stevens in the Little proceedings under the terms of the Agreement between Reliance Financial and First Legacy.  (Doc. #1-1.)

Montgomery County Circuit Court.  Instead, Stevens filed an entirely separate lawsuit against Reliance Financial, but the jurisdictional provision on which he relies simply does not confer to this federal court personal jurisdiction over Reliance Financial in an entirely new action that Stevens initiated himself.

The Eleventh Circuit has also held that a third-party, like Stevens, cannot enforce a conferral of personal jurisdiction clause that is contained in a contract to which he is not a party.  *See Meyer v. Carnival Corp.*, 938 F. Supp. 2d 1251, 1256 (11th Cir. 2013) (holding that third-party could not enforce a conferral of jurisdiction clause contained in a contract to which he was not a party); *Barnett v. Carnival Corp.*, 2007 WL 1526658, at *4 (S.D. Fla. May 23, 2007) (holding that a plaintiff could not enforce a forum selection clause in an independent contractor agreement to which she was not a party).  There is no dispute that Stevens is not a party to the Agreement, nor was he a signatory.  The only parties and signatories to the Agreement were Reliance Financial and First Legacy.  (Doc. #1-2.)[3]  Thus, because Stevens is neither a party nor a signatory to the Agreement, he cannot enforce a waiver of personal jurisdiction clause contained therein.

Stevens likewise cannot enforce the waiver of personal jurisdiction as a third-party beneficiary to the Agreement.  Indeed, Section 11.10 states:

Nothing expressed or referred to in this Agreement will be construed to give

---

[3]  The first paragraph of the Agreement states: "This Membership Interest Purchase Agreement ("*Agreement*") is made as of April 16, 2009, by and between First Legacy Investors, Inc., a North Carolina corporation ("*Buyer*"), and Reliance Financial Corporation, a Georgia corporation ("*Seller*"))."

any Person other than the parties to this Agreement any legal or equitable right, remedy, or claim under or with respect to this Agreement or any provision of this Agreement.  This Agreement and all of its provisions and conditions are for the sole and exclusive benefit of the parties to this Agreement and their successors and assigns.

(Doc. #1-2.)  Thus, as Reliance Financial argues, because Stevens is not a party to the Agreement, he has no "legal or equitable right, remedy, or claim" under the Agreement, which includes the right to invoke a waiver of personal jurisdiction contained in the Agreement.  *See Ex parte Cintas Corp.*, 958 So. 2d 330 (Ala. 2006) (refusing to allow nonsignatories to enforce a forum selection clause, as language in the agreement similar to the language contained in Section 11.10 of the Agreement prevented nonsignatories from being "entitled to enforce the forum-selection clause").

Because the Court has found that Reliance Financial did not contractually consent to the personal jurisdiction of this Court as part of the Agreement, it must now determine whether it can exercise personal jurisdiction over Reliance Financial under a traditional due process analysis.  "Jurisdiction consistent with the Constitution and the laws of the United States is that which comports with due process."  *Sherritt*, 216 F.3d at 1291 (citing *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1057 (11th Cir. 1996), quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotations omitted). "Considerations of due process require that a non-resident defendant have certain minimum contacts with the forum, so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice."  *Id.* (internal footnote omitted).  "The nature and quality of these contacts, however, vary depending upon whether the type of personal jurisdiction

12

being asserted is specific or general." *Id.*

Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint. *Id.* (citing *Madara v. Hall*, 916 F.2d 1510, 1516 n.7 (11th Cir. 1990), citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 & 9 (1984)). "It has long been recognized that a court has the minimum contacts to support specific jurisdiction only where the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "General jurisdiction, on the other hand, arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated." *Id.* at 1292. "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Id.* (citing *Borg-Warner*, 786 F.2d at 1057; *Hall*, 466 U.S. at 412–13).

There are no allegations in the complaint suggesting that Reliance Financial, a Georgia corporation, conducted or purposefully directed its activities toward the State of Alabama. Nor does Stevens present any evidence to this effect. Indeed, the only evidence before the Court comes in the form of affidavit testimony from Bryant N. Jones ("Jones"), Executive Vice President and Chief Administrative Officer of Reliance Financial, which Stevens has not disputed or otherwise challenged. Jones's uncontroverted testimony establishes that Reliance Financial is not licensed to do business in Alabama, does not

13

maintain a registered agent in Alabama, and has never provided any services in Alabama. (Doc. #8-1, ¶ 3.)  Reliance Financial has no offices, mail receptacles, or telephone listings in Alabama.  (Doc. #8-1, ¶ 3.)  Reliance Financial has no real estate, bank accounts, or property interests in Alabama.  (Doc. #8-1, ¶ 3.)  Reliance Financial has not paid, or been required to pay, taxes in Alabama.  (Doc. #8-1, ¶ 3.)  Reliance Financial has no employees in Alabama.  (Doc. #8-1, ¶ 3.)  Reliance Financial has not marketed, sold, or advertised its services or products in Alabama.  (Doc. #8-1, ¶ 3.)  And, finally, Reliance Financial has never filed suit in any Alabama court.  (Doc. #8-1, ¶ 3.)  This uncontroverted testimony, coupled with the allegations in the complaint, establishes that Reliance Financial does not have sufficient minimum contacts with this forum such that this Court could exercise personal jurisdiction over it, whether general or specific, and still comport with the requirements of due process.

Stevens, apparently anticipating this conclusion, has not argued that Reliance Financial has minimum contacts with this Court sufficient to warrant the exercise of personal jurisdiction in this case.  Instead, Stevens requests that the Court allow him to conduct jurisdictional discovery before resolving the question of personal jurisdiction.  Stevens's first basis for this request is that he needs to "test" Jones's affidavit testimony and actual knowledge to assess whether Reliance Financial is "withholding information on its contacts with" Alabama from Stevens and the Court.  (Doc. #22.)  The Court finds no merit in this particular basis for Stevens's jurisdictional discovery request.  There is no indication that Jones is withholding information from Stevens or the Court with respect to Reliance

14

Financial's contacts with Alabama.  Moreover, Stevens's claims that Jones's affidavit contains only "mere statements," "self-denials," and "conclusory assertions" that Reliance Financial is not subject to the personal jurisdiction of this Court is misplaced.  Perhaps if Jones's affidavit consisted only of a statement along the lines of "Reliance Financial has no contacts with Alabama," the Court would be more persuaded by this argument.  But Jones's affidavit provides much more substance than this with respect to Reliance Financial's contacts, or lack thereof, with Alabama, and falls outside the category of "conclusory" or "self-denying" affidavits.  Thus, Stevens has failed to show a sufficient need for jurisdictional discovery based on Jones's affidavit.

The Court also finds that Stevens's alter-ego argument does not justify permitting jurisdictional discovery.  In support of his position, Stevens argues that Reliance Financial was the "alter-ego" of Reliance Securities (at least prior to the April 16, 2009 sale), and because Reliance Securities had significant contacts with the forum state, this Court can exercise personal jurisdiction over Reliance Financial as Reliance Securities's alter-ego.  While a court may pierce the corporate veil when a defendant is an alter-ego of another entity, exercising such power is not done lightly.  "It is well established that as long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other."  *Sherritt*, 216 F.3d at 1293.

> Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there.  Where the "subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has presented some semblance of independence from the parent, jurisdiction over the parent may not be acquired

on the basis of the local activities of the subsidiary."

*Id.* (citing *Portera v. Winn Dixie of Montgomery, Inc.*, 996 F. Supp. 1418, 1423 (M.D. Ala. 1998)).

In this case, Stevens alleges that Reliance Financial "fully controlled" Reliance Securities and that, through its ownership and control of Reliance Securities, Reliance Financial was responsible for oversight of Reliance Securities' and its representatives' adherence to and compliance with regulatory guidelines. Stevens further alleges in the complaint that Reliance Financial exercised control over Reliance Securities "through the Board of Directors of Reliance Securities, which was comprised of and controlled by directors and officers of Reliance Financial[,] . . . through the internal audit department. . . , as well as through its legal department, who had authority to direct management and were responsible for oversight of Reliance Securities' and its Representatives' adherence to and compliance with regulatory guidelines[.]" (Doc. #1-1.) These allegation (rather than the testimony contained in Jones's affidavit) are more appropriately described as "conclusory" and, standing alone, fail to establish a prima facie case of personal jurisdiction. Indeed, the law recognizes that "a parent corporation can be directly involved in the activities of its subsidiaries without incurring liability if the involvement is 'consistent with the parent's investor status.'" *Vogt v. Greenmarine Holding, LLC*, 2002 WL 534542, at *6 (N.D. Ga. Feb. 20, 2002) (quoting *United States v. Bestfoods*, 524 U.S. 51, 72 (1998)). "Such parental involvement could include 'monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general polices and

16

procedures." *Id.*  Also, it is "'entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary' . . . ." *Id.* (quoting *Bestfoods*, 524 U.S. at 69).  In sum, even taking the allegations contained in the complaint as true, including those relating to piercing the corporate veil, all these allegations do is describe activities or a relationship between Reliance Financial and Reliance Securities that is perfectly within the realm of control a parent may exercise over a subsidiary without foregoing the protections afforded by the corporate existence.

These allegations do not contend or provide any factual support suggesting that Reliance Financial's corporate existence was simply a formality.  In the Court's opinion, Stevens's alter-ego argument amounts to a theory or a hunch.  Stevens has not demonstrated that he will be able to supplement his jurisdictional allegations through discovery.  Instead, Stevens claims that he simply needs to explore and "test" this theory.  However, the Court is not obligated to permit jurisdictional discovery based on a party's "mere 'hunch that there may be facts—or a desire to find out if there are any facts—that justify the exercise of personal jurisdiction.'"  *Kason Indus., Inc. v. Dent Design Hardware, Ltd.*, 952 F. Supp. 2d 1334, 1352–53 (N.D. Ga. June 7, 2013); *see also Atlantis Hydroponics, Inc. v. Int'l Growers Supply, Inc.*, 915 F. Supp. 2d 1365, 1380 (N.D. Ga. 2013) ("The purpose of jurisdictional discovery is to ascertain the truth of the allegations or facts underlying the assertion of personal jurisdiction.  It is *not* a vehicle for a fishing expedition in hopes that discovery will sustain the exercise of personal jurisdiction) (internal quotations omitted).  Based on this, Stevens's request to conduct jurisdictional discovery is DENIED, and Reliance Financial's

motion to dismiss for lack of personal jurisdiction is GRANTED.[4]

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant Reliance Financial's Motion to Dismiss (Doc. #7) is GRANTED and that Plaintiff William Slay Stevens's claims against it are DISMISSED without PREJUDICE.  Plaintiff William Slay Stevens's request to conduct jurisdictional discovery (Doc. #22) is DENIED.

DONE this the 18th day of February, 2014.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE

---

[4] Because the Court has disposed of Reliance Financial's motion on Rule 12(b)(2) grounds, it is not necessary for the Court to discuss Reliance Financial's alternative Rule 12(b)(6) arguments.